# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**RAMÓN OJEDA-RESTO, ANÍBAL RODRÍGUEZ-SERRANO, NELSON CRUZ, AND COMITÉ QUIERO MIS CHAVOS, INC.**

**Plaintiff,**

v.

**MARK R. BLANKENSHIP, DALE MACGILLIVRAY, FRANCISCO GONZÁLEZ-RIOS, and ÁNGEL FEBRES-ALMÉSTICA**

**Defendants.**

CIVIL NO. 17-1978 (GAG)

## OPINION AND ORDER

Ramón Ojeda-Resto, Aníbal Rodríguez-Serrano, Nelson Cruz, along with Comité Quiero Mis Chavos, Inc. (collectively "Plaintiffs") brought forth the current action alleging violations under §§ 502(a)(2) and (3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(2) and (3). (Docket No. 43 at ¶ 1.1). Before the Court is Mark R. Blankenship, Dale MacGillivray, Francisco González, and Ángel Febres-Alméstica's (collectively "Defendants") Joint Motion for Judgment on the Pleadings and Memorandum of Law in Support. (Docket No. 47). Defendants assert that Plaintiffs' Amended Complaint (Docket No. 43) fails to present an injury in fact sufficient to establish constitutional and statutory standing under ERISA. (Docket No. 47 at 2). Additionally, Defendants contend that allegations presented in the Amended Complaint are "so threadbare and conclusory that they cannot withstand dismissal." Id. at 3. Defendants also challenge Comité Quiero Mis Chavos' ("Comité") statutory standing under

**Civil No. 17-1978 (GAG)**

ERISA. Id. at 2. For the reasons below, the Court **GRANTS** Defendants' Joint Motion for Judgment on the Pleadings. (Docket No. 47).

I. **Relevant Factual Background**

Taking the Amended Complaint's well-pled facts as true, and drawing all reasonable inferences in favor of the non-movant/pleading parties, the facts are as follows: On November 7, 1973, the International Longshoremen's Association-PRSSA Welfare Plan ("the Welfare Plan") was established through an Agreement and Declaration of Trust. (Docket Nos. 43 at ¶ 4.1; 45 at ¶ 4.1; and 46 at ¶ 4.1). The Welfare Plan is a multiemployer welfare benefit plan subject to ERISA, 29 U.S.C. § 1001 *et seq.* (Docket No. 43 at ¶ 4.3). The Agreement and Declaration of Trust was formed and executed pursuant to a collective bargaining agreement between the International Longshoremen's Association, AFL-CIO ("ILA"), members of Local 1575 International Longshoremen's Association ("Local 1575"), and Horizon Lines, Inc. ("Horizon"). (Docket Nos. 43 at ¶ 4.1; 47 at 3). The Welfare Plan was "irrevocable trust created pursuant to Section 302(c) of the Labor-Management Relations Act of 1947 and a multiemployer welfare plan as defined in ERISA," which offered welfare and health benefits for eligible participants, dependents, and beneficiaries. (Docket Nos. 43 at ¶ 4.3; 45 at ¶ 4.3; and 46 at ¶ 4.3)

The Welfare Plan was overseen by six Trustees. Horizon named three Trustees on behalf of the contributing parties, while the ILA and Local 1575 (collectively the "Union"), named three additional Trustees. (Docket No. 43 at ¶ 4.8). As of March 31, 2015, Horizon was the sole employer contributor to the Welfare Plan. Id. at ¶ 4.12. At that time, the three Trustees appointed by Horizon were Defendant Mark R. Blankenship ("Defendant Blankenship"), Paul Hydock, and Héctor Rosario. The Trustees appointed by the Union were Defendant Franciso González, Defendant Ángel Febres-Alméstica, and Efraín Robles Albarrán. (Docket Nos. 43 at ¶ 4.14; 45 at

¶ 4.14; 46 at ¶ 4.14). Defendants are the current remaining Trustees (Id. at ¶ 3.6) and are responsible for making determinations and decisions on behalf of the Welfare Plan. (Docket Nos. 43 at ¶ 4.7; 47 at 3).

Matson Navigation Company, Inc. completed an asset purchase agreement with Horizon on May 29, 2015, acquiring Horizon's liabilities and obligations for their Puerto Rico operations, including the duty to designate the Employer Trustee. (Docket No. 43 at ¶ 4.15). Local 1575 ceased to exist at the completion of the asset purchase agreement. Id. at ¶ 4.16. Once the asset purchase agreement was finalized and Local 1575 was dissolved, former members of Local 1575 formed Comité with the aim of preserving their interests. Id. On April 27, 2016, Efraín Robles Albarrán resigned from his position as trustee. Id. at ¶ 4.17. As Local 1575 no longer exists, the position left by Robles's resignation has remained vacant. Id. at ¶ 4.17. Benefits ceased and termination of the Welfare Plan began on December 31, 2016. Id. at ¶ 4.7.

Individual plaintiffs Ramón Ojeda-Restro ("Plaintiff Ojeda"), Aníbal Rodríguez-Serrano ("Plaintiff Rodríguez"), and Nelson Cruz ("Plaintiff Cruz"), as former members of Local 1575, were participants of the Welfare Plan and are current members of Comité. Plaintiff Ojeda, Plaintiff Rodríguez, and Plaintiff Cruz worked for Horizon until March, 2015, when Horizon halted operations in Puerto Rico. (Docket No. 43 at ¶ 3.1) As members of the corporation Comité, Plaintiff Ojeda serves as treasurer, Plaintiff Rodríguez serves as secretary, while Plaintiff Cruz is a rank-and-file member. Id. Plaintiffs claim that Defendants have violated their management obligations while operating and winding down the Welfare Plan. Id. at ¶ 4.18.

**II.    Standard of Review**

When considering a motion for judgment on the pleadings, Rule 12(c) of the Federal Rules of Civil Procedure states that "after the pleadings are closed–but early enough not to delay trial–a

**Civil No. 17-1978 (GAG)**

party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). Courts must analyze a Rule 12(c) motion under the same standard as applied to Rule 12(b)(6) motions to dismiss. Marrero-Gutierrez v. Molina, 491 F.3d 1, 5 (1st Cir. 2007). The court analyzes the complaint in a two-step process under the current context-based "plausibility" standard established by the Supreme Court. See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) which discusses Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Id. A complaint does not need detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678-79. Second, the court must then "take the complaint's well-pled (i.e., nonconclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz, 669 F.3d at 55. Plausible, means something more than merely possible, and gauging a pleaded situation's plausibility is a context- specific job that compels the court to draw on its judicial experience and common sense. Id. (citing Iqbal, 556 U.S. at 678-79). This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Twombly, 550 U.S. at 556. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). If, however, the "factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." Ocasio-Hernández, 640 F.3d at 12 (quoting Iqbal, 556 U.S. at 678).

### III. Legal Analysis

Defendants in their Joint Motion for Judgment on the Pleadings and Memorandum of Law in Support (Docket No. 47), contest that Plaintiffs fail to demonstrate an injury in fact, and consequentially do not possess Article III constitutional standing to bring this case. Additionally, Defendants aver that Plaintiffs' allegations are so threadbare that they warrant dismissal of the complaint. Id. at 2. Defendants further propound that Comité does not enjoy statutory standing under ERISA. Id.

### A) Standing

"The presence or absence of constitutional standing implicates a federal court's subject-matter jurisdiction. When an issue implicates subject-matter jurisdiction, a federal court is obliged to resolve that issue even if the parties have neither briefed [n]or argued it." Merrimon v. Unum Life Ins. Co, of Am., 758 F.3d 46, 52 (1st Cir. 2014). A case cannot be heard by a federal court in the absence of Article III constitutional standing, which proffers that a case and controversy is present and ripe when a plaintiff can demonstrate an injury, causation, and redressability. Id. An *injury in fact* exists when a plaintiff's legally protected interest is intruded upon in a manner that is concrete and particularized or actual and imminent. Id. The threat must not be conjectural nor hypothetical. Id. at 52. A plaintiff must, in no vague terms, allege facts to establish such a harm. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016).

A violation of ERISA's fiduciary requirements does not by its nature open standing to all plan beneficiaries. ERISA establishes that fiduciaries must adhere to certain standards and allows beneficiaries to sue for fiduciaries' failures to comply. See Merrimon, 758 F.3d at 53. Sections 404(a)(1)(A) and (B), under which Plaintiffs bring forth this action, mandates that ERISA fiduciaries are to discharge their duties in the sole interest of plan participants and beneficiaries,

**Civil No. 17-1978 (GAG)**

and with the diligence, care, prudence, and skill of a prudent person acting in a like capacity. 29 U.S.C. §§ 404(a)(1)(A) and (B). ERISA beneficiaries have legally recognizable rights for plan fiduciaries to faithfully perform their duties. Merrimon, 758 F.3d at 53. However,

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation.

Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1542 (2016). A beneficiary must still demonstrate a tangible personal harm beyond the fiduciaries' violation(s). Merrimon, 758 F.3d at 53. Defendants propound that Plaintiffs have presented no such a harm/injury in their Amended Complaint. (Docket No. 47 at 1-2). The Court disagrees.

Plaintiffs' allegations, if proven, constitute a concrete injury beyond a statutory violation. Plaintiffs proffer that Defendants have operated the plan in "total obscurity, have refused to provide participants with copies of the full financial reports … in spite of the repeated requests … have modified the plan eligibility requirements without notifying the changes to the Welfare Fund participants … as mandated by the 2000 Trust Agreement and ERISA." (Docket No. 43 at ¶ 4.19). Additionally, Plaintiffs contend that Defendants made "unauthorized and/or illegal disbursements" to a disbarred attorney who was acting as legal counsel for the Welfare Fund until 2017. Id. Furthermore, Plaintiffs state that Defendants have "incurred and continue to incur in excessive administrative expenses," significantly depleting the assets of the Welfare Fund in violation of the Trust Agreement under which it was founded and ERISA. Id. Ergo less money and benefits are available than would have been had the Welfare Plan been operated differently. (Docket No. 43 at ¶ 4.20; Docket No. 47 at 6). Such actions would demonstrate a tangible harm to Plaintiffs, even in the event that the actions did/do not result in a financial loss. See Merrimon, 759 F.3d at 53 ("They

6

**Civil No. 17-1978 (GAG)**

contend that the insurer has wrongfully retained and misused their assets. If proven, this would constitute a tangible harm even if no economic loss results."). As such, the Court finds Plaintiffs do possess Article III constitutional standing.

B) Failure to State a Claim

While the Court finds Plaintiffs do have standing, fatally, Plaintiffs do not provide sufficient facts to sustain a plausible claim for relief. Rather, the Amended Complaint presents threadbare allegations and legal conclusions. A complaint is not obliged to present "detailed factual allegations" to be valid. Ashcroft v. Iqbal, 556 U.S 662, 678 (2009). However, a complaint must not simply state mere "'naked assertion[s]' devoid of 'further factual enhancement.'" Id. Well pled facts are non-conclusory and non-speculative. Barchock v. CVS Health Corp., 886 F.3d 43, 48 (1st Cir. 2018). "If a plaintiff's allegations, taken as true, are insufficient to establish proximate causation, then the complaint must be dismissed; if they are sufficient, then the plaintiff is entitled to an opportunity to prove them." Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 134 n. 6 (2014); see also Iqbal, 556 at 678-679. Courts, however, are to provide "some latitude" in cases in which "a material part of the information" required is controlled by defendants. García-Catalán v. United States, 734 F.3d 100, 104 (1st Cir. 2013)(citing Menard v. CSX Transp. Inc., 698 F.3d 40, 45 (1st Cir. 2012). "At the pleading stage, the plaintiff need not demonstrate that she is likely to prevail, but her claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" García-Catalán v. United States, 734 F.3d 100, 102-03 (1st Cir. 2013)(citing Iqbal, 556 U.S. at 678). The principle that the Court must accept all allegations as true does not extend to legal conclusions. Iqbal, 556 U.S. at 680.

As stated above, section 404(a)(1)(A) and (B), outlines ERISA fiduciaries' duties of loyalty and prudence. "Importantly, the Supreme Court has explained that the content of the duty of

prudence turns on the circumstances prevailing at the time [of] the fiduciary acts. Accordingly, with respect to whether a complaint states a claim of imprudence under ERISA, the appropriate inquiry will necessarily be *context specific*." Barchock v. CVS Health Corp., 886 F.3d 43, 44 (1st Cir. 2018)(internal quotations marks and citations omitted; emphasis added)(citing Fifth Third Bancorp v. Dudenhoeffer, 134 S. Ct. 2459, 2471 (2014); 29 U.S.C. § 1104(a)(1)(B)). Whether a fiduciary is prudent is an evaluation of conduct as opposed to an evaluation of performance in hindsight. That is to say, "[t]he 'test is how the fiduciary acted viewed from the perspective at the time of the challenged decision rather than from the vantage point in hindsight.'" Bunch v. W.R. Grace & Co., 55 F.3d 1, 7 (1st Cir. 2009) (quoting Roth v. Sawyer-Cleator Lumber Co., 16 F.3d 915, 917-18 (8th Cir. 1994).

*1. Alleged Violations*

Plaintiffs' Amended Complaint alleges that Defendant's violated the duty of prudence and loyalty required under ERISA. (Docket No. 43 at ¶ 5.2). Specifically, they make five distinct allegations. Id. at ¶ 4.19- 4.20. Succinctly stated the allegations are as follows; (1) that the Welfare Fund has been operated and managed in "total obscurity," and that Defendants have "refused to provide participants with copies of the full annual financial reports," (2) Defendants have modified plan eligibility requirements without notifying participants, (3) that "unauthorized and/or illegal disbursements" have been made, (4) the purchase of health benefits to individuals who are ineligible, and (5) excessive administrative expenses and payments that Defendants "have made and/or contemplate to make," all actions which Plaintiffs contend depleted the Welfare Fund. While this may satisfy Article III constitutional standing requirements, Plaintiffs' allegations,

**Civil No. 17-1978 (GAG)**

taken as true, are insufficient to establish proximate cause.[1] Plaintiffs' Amended Complaint lacks sufficient factual basis for all five alleged violations.

### a) Operating in Obscurity

Plaintiffs claim that Defendants have operated and managed in "total obscurity," while "[refusing] to provide participants with copies of the full annual financial reports." (Docket No. 43 at ¶ 4.19). Section 1024(b)(4) of ERISA makes available upon written request by a plan participant or beneficiary the latest annual reports, terminal reports, and summary plan descriptions. 29 U.S.C. § 1024(b)(4). Thus, Plaintiffs do have a right to access full annual financial reports if requested in writing, and the denial of access to such reports violates ERISA. However, Plaintiffs have failed to present any facts to support their assertion that Defendants are refusing to provide documents to which they are entitled to. Plaintiffs have not stated when they requested the full annual financial reports, how the requests were made, and whether the request was made in writing. All this information is within Plaintiffs' realm of knowledge and control. Without more facts, Plaintiffs are making bare assertions and conclusions that the plan is being managed in obscurity. A simple statement of a right (right to reports upon *written* request), and a claim that Defendants' violated said right, with no factual support, is not a well pled allegation under Iqbal.

### b) Modification in Plan Eligibility

Plaintiffs state that Defendants "modified the plan eligibility requirements without notifying the changes to the Welfare Fund participants," (Docket No. 43 at ¶ 4.19) in violation of ERISA and the Welfare Plan. ERISA does provide plan participants a right to notice of changes in plan eligibility and benefits. 29 U.S.C. § 1024 (b)(1)(B). In fact, ERISA provides a strict time

---

[1] Proximate causation is not a requirement of constitutional standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct. Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1391 n. 6 (2014)

frame in which modifications of benefits must be reported to plan participants. In the case of a material reduction in coverage or change in benefits to a group health plan, a summary description of the modifications are to be provided to participants within 60 days. Id. For changes that are non-material, a summary description of the modifications are to be provided within "210 days after the end of the plan year in which the change is adopted." Id.; see also Palino v. Casey, 664 F.2d 854, 859 n. 7 (1st Cir. 1981). Under ERISA the timing of notification and nature of the modifications are crucial components.

In their discussion of plan modification, Plaintiffs do not specify which eligibility requirements/benefits have been altered, the nature of the modifications, nor when such modifications occurred. Plaintiffs simply state that changing the Welfare plan eligibility without notification would violate the trust agreement. They do not state how such modifications would violate the trust, nor do they direct the Court to any section of the trust which would prohibit such an action. Furthermore, the Welfare Plan itself provides Defendants with a wide latitude to operate and manage the plan:

> The Trustees shall have the exclusive right, power, and authority, in their sole and absolute discretion to administer, apply, construe and interpret the provisions of the Agreement and Declaration of Trust … The authority of the Trustees includes, without limitation, the sole and absolute discretion to:
> (a) take all actions and make all decisions with respect to the eligibility for, and the amount of benefits payable.

(Docket No. 45-1 at 31). Absent more information as to how such modifications would violate the plan, or information regarding the date/nature of the alleged modifications, and Defendants' subsequent failure to timely inform, Plaintiffs are presenting a standalone legal conclusion that their right to notification has been infringed upon.

        c) Unauthorized/illegal Disbursements

**Civil No. 17-1978 (GAG)**

Plaintiffs allege unauthorized "and/or" unlawful payments made by Defendants. (Docket No. 43 at ¶ 4.19). As noted above, an attack of a fiduciary's duty of prudence requires context. Barchock, 886 F.3d at 44. "The content of the duty of prudence turns on the circumstances prevailing at the time." Id. Claims for a breach of fiduciary duty are to be brought

> … the earlier of--
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation …

29 U.S.C.S § 1113; see also Watson v. Deaconess Waltham Hosp., 298 F.3d 102, 118 (1st Cir. 2002). In the case that there is fraud or concealment the period to file is six years. 29 U.S.C.S § 1113. Plaintiffs state that Defendants' made illegal payments to an attorney who was disbarred in 2013 and continued to serve as legal counsel until 2017. (Docket No. 43 at ¶ 4.19). Yet, as proffered by Defendants, Plaintiffs "do not (a) identify to *whom* such payments were made, (b) *when* the payments were made, or (c) *why* such payments were supposedly 'unauthorized and/or illegal.'" (Docket No. 47 at 18). Furthermore, Plaintiffs make no claim that Defendants had knowledge of the attorney's disbarment, nor do they make any mention as to when they discovered such payments were being made. Additionally, they make no accusation of fraud nor concealment. As alleged, such payments may be ones that Plaintiffs disagree with but ultimately do not violate the law. Beyond, any claims of illegality in relation to attorney payments may be time barred. An assertion that a payment was unauthorized "and/or" illegal without any further development is a classic legal conclusion.

    d) Purchase of Health Benefits to Ineligible Individuals

Plaintiffs simply state that Defendants have purchased health benefits to individuals who are ineligible. However, they fail to present any facts to strengthen this allegation. Such as, how

11

**Civil No. 17-1978 (GAG)**

individuals who have received benefits are ineligible, who said individuals are, or what benefits are being provided. Such a claim alone is "a naked assertion devoid of further factual enhancement" Iqbal, 556 U.S. at 678 (internal citations removed). "When allegations, though disguised as factual, are so threadbare that they omit any meaningful factual content, we will treat them as what they are: naked conclusions." A.G. v. Elsevier, Inc., 732 F.3d 77, 81 (1st Cir. 2013).

e) Possible Payments

Finally, the Court addresses Plaintiffs assertions regarding payments and withdrawals made by Defendants on behalf of/and from the Welfare Fund. Such claims go to the heart of the duty of prudence required by fiduciaries. 29 U.S.C. § 404(a)(1)(A). A fiduciary must adhere to the standard of diligence, care, prudence, and skill of a prudent person acting in a like capacity. Id. Thus, in order for once to violate their fiduciary duties they must deviate from how a prudent person would comport themselves.

Plaintiffs state that Defendants have incurred in "excessive administrative expenses." (Docket No. 43 at ¶ 4.19). Plaintiffs claim that Defendants "have made and/or contemplate to make," hefty and, by Plaintiffs' implication, unnecessary payments, as well as a $1.2 million withdrawal. Id. However, Plaintiffs present no information as to what the alleged excessive administrative expenses pertain to, how they exactly they are excessive, or how they deviate from standard administrative expenses. Furthermore, Plaintiffs fail to state whether the hefty payments and $1.2 million withdrawal from the fund have even occurred. Unfortunately, without further elaboration, Plaintiffs' contentions regarding such payments are not actionable. A simple statement that administrative expenses have been excessive is nothing more than a legal conclusion. Again, Plaintiffs present standalone legal conclusions.

Plaintiffs' Amended Complaint presents threadbare allegations and legal conclusions that are lacking in factual support. While Plaintiffs contend that this action is such a case that the information required to form a well pled complaint is within Defendants' control, and thus they should be provided leniency (Docket No. 52 at ¶ 2.5), the Court disagrees. Plaintiffs at this moment, and at the time of filing their Complaint, have in their possession sufficient facts to form a well pled complaint. Plaintiffs should know full-well when they requested documents/when those requests were denied, the nature of the changes in plan eligibility, how payments were unauthorized and/or illegal, and why administrative expenses are excessive. Plaintiffs' Amended Complaint is too threadbare to pass the pleading stage as it currently stands. Plaintiffs' allegations merely state "a sheer possibility" that Defendants acted unlawfully and are little more than "the-defendant-unlawfully-harmed-me accusation[s]". Iqbal, 556 U.S. at 678. As such, the Court will not continue to delve into Defendants' subsequent claims regarding Comité's statutory standing.

### IV. Conclusion

For the reasons stated above, Defendants' Joint Motion for Judgment on the Pleadings and Memorandum of Law in Support. (Docket No. 47) is **GRANTED**. Judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico this 26th day of September, 2017.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge